## D. J. FULLER v. THE STATE.

*No. 3977.   Decided December 19.*

1. **Murder of First Degree—Effect of Acquittal of, on Trial of Murder of Second Degree.** — Where there has been a trial for murder and a conviction for murder in the second degree, which was set aside, if the evidence on the second trial establishes a murder on express malice and murder in the first degree, this does not constitute such variance between the allegations and proof as would entitle defendant to an acquittal, but he may legally be convicted upon such proof of murder in the second degree.

2. **Same.**—A defendant on trial for murder in the second degree is not entitled to an acquittal because the evidence against him would sustain a conviction for murder in the first degree. It is no defense to an indictment that the evidence shows that the defendant committed a higher offense than that charged.

3. **Practice—Recalling Witness to lay Predicate for His Impeachment.** It is not error to permit a witness who has been examined and discharged to be recalled for the purpose of laying a predicate for his impeachment by showing that he had testified differently on another trial with regard to the same facts.

4. **Right to Impeach Where Witness·does not Recollect.** — It is no longer an open question that a witness who testifies that he has no recollection of having made the contradictory statements may be impeached by proof of such contradictory statements.

5. **Acts and Declarations of Deceased Inadmissible, When.** — The declarations of the deceased to a third party, on the morning before the homicide, "that he had nothing against defendant," "wanted to be friendly with him," "wanted no trouble with him," and that at the time deceased "did not seem mad or angry with defendant," *held*, such declarations and acts of deceased not having come to the knowledge of defendant, were inadmissible, because they could have had no influence one way or another upon his mind, and could neither aggravate nor reduce the crime.

6. **Same—Cases Reaffirmed.**—Johnson v. The State, 22 Texas Court of Appeals, 206; Brumley v. The State, 21 Texas Court of Appeals, 222; Ball v. The State, 29 Texas Court of Appeals, 107.

7. **Abuse of Privilege of Argument by District Attorney.**—A prosecuting attorney is not warranted in asserting a fact not in evidence which is préjudicial to the defendant.

8. **Same—Allusion in Argument to Former Conviction which has been Set Aside.**—In his argument to the jury, the district attorney used the following language: "This is not a case which calls for mercy at the hands of the jury. Mercy has already been extended to the defendant by the verdict of the former jury. Had not the State's case been compromised by the verdict of the former jury, I would have had a case of murder in the first degree. You can not convict of murder in the first degree as it is, but I do ask you to duplicate the verdict of the former jury. There is nothing less in this case but murder in the first degree, and I know it." *Held*, reversible error, as being in direct contravention of a statutory provision (Code Crim. Proc., art. 783) which provides that where a new trial has been granted "the former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument."

9. **Charge of Court—Reasonable Appearances—Bodily Injury.**—On a trial for murder, where as to reasonable appearances of danger the court instructed the jury, that "If at the time it reasonably appeared to the mind of the defendant by the acts of H. L. Ingraham, or by his words coupled with his acts, that it was the then present purpose of the said H. L. Ingraham to inflict upon defendant death or serious bodily injury, and such conduct on the part of deceased raised in the mind of defendant a reasonable expectation or fear of death," etc., but omitted to charge as to reasonable expectation or fear "of serious bodily injury," *held*, that the charge was erroneous in limiting defendant's right to reasonable expectation or fear of death, inasmuch as defendant would have the same right to defend himself against appearances of serious bodily harm as against appearances that indicated his death.

APPEAL from the District Court of Van Zandt. Tried below before Hon. Felix J. McCord.

Appellant was indicted for the murder of one H. L. Ingraham, and this appeal is from a conviction of murder in the second degree, with punishment assessed at eight years in the penitentiary. The record discloses that the appellant had been previously tried and convicted

in the court below of murder in the second degree, with a punishment affixed at a term of thirty-five years in the penitentiary, but that that conviction had been set aside and a new trial awarded.

Very briefly and succinctly stated, the facts appear from the record to be, that the deceased, H. L. Ingraham, was a cropper on the farm of defendant; that while working on the place and living at defendant's house, and some three or four months before the killing, he commenced paying attention and making love to defendant's daughter Zilla, a young girl about 15 years of age, who seems to have been the pet and idol of her father. It seems that the parents were in total ignorance of the courtship going on between the deceased and their daughter, and had not the slightest suspicion of it. The killing took place on Sunday morning, somewhere between 10 and 11 o'clock, in the road near the house of one Spears. On Saturday, the day before, the young girl Zilla and a younger sister had gone on horseback over to a neighbor's, the parents having given Zilla permission to go there and spend the night. After she had been at this neighbor's a short time, the deceased came and told her that he had procured a license to marry, and they got into a buggy and went off to a parson's close by, were married, and returned to the house of the neighbor, where Zilla was to stay all night—reported that they were married, and did stay all night, occupying the same room. The next morning they got into the buggy and started to go to another neighbor's house, deceased taking his pistol with him, in his hip pocket. About the time they started off in their buggy, some one informed defendant at his home of the marriage of his daughter and deceased, which information seems to have incensed him greatly. He got his Winchester, mounted his mule, and pursued them rapidly, he having ascertained the direction they were going. When he overtook them, near the house of Spears, both the parties in the buggy, the young married couple, commenced hallooing, "Help! help! Run here!" and defendant rode in front of, got down, and stopped the buggy, having his gun in his hand. The young woman, who was the only eye-witness to what did occur, says, that after her father had ordered her out of the buggy, and she had refused to get out, her father took hold of her to pull her out, and defendant seized hold of her to prevent him from doing so; that while this struggle was going on deceased drew his pistol from his hip pocket and was in the act of shooting her father, when her father instantly presented and fired his Winchester, the ball grazing her cheek and taking off the end of the lower portion, or lobe, of her ear, and struck defendant in the forehead, killing him almost instantly. Parties who had heard the hallooing and firing ran up almost instantly to the scene, and as soon as they met defendant he told them that he had to shoot the deceased, or that he (deceased) would have killed him.

Defendant proved by most of the witnesses, both for the State and defense, some of whom had known him for nearly fifty years, that he was a quiet, peaceable, orderly citizen.

His daughter Zilla's reputation for truth and veracity was fully established as good.

*J. C. Kearby, J. C. Russell*, and *Kearby & Greer*, for appellant, filed an able brief and argument.

No brief on file in the record for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a judgment of conviction for murder in the second degree, the penalty being eight years in the penitentiary.

It appears from the record that the defendant had been previously tried and convicted of murder in the second degree, but that judgment had been set aside and a new trial awarded him.

As a preliminary question, we first propose to notice appellant's contention, which, in effect, was and is, that where an accused has been once tried for murder in the first degree and found guilty of murder in the second degree, and said last judgment is set aside, and he is put upon trial a second time for murder in the second degree, if the evidence on such second trial makes out a case of murder committed upon express malice, which is murder in the first degree, then and in that event the accused can not be convicted of murder in the second degree, because the allegations and proof do not correspond, but that he should be acquitted of any offense, and it would be the duty of the court to so charge the jury. In support of this proposition appellant relies upon the rule as announced by this court in Parker's case, 22 Texas Court of Appeals, 106. In that case Parker had been convicted of manslaughter, which operated an acquittal of murder in the first and second degrees. On his subsequent trial, a new trial having been awarded, it was held error for the court to charge the jury upon the law applicable to murder in the first and second degrees, though it had instructed the jury that they could not convict of a higher degree of homicide than manslaughter; and further, that the court erroneously instructed the jury, if they believed from the evidence that the defendant was guilty of either degree of murder, they could find him guilty of manslaughter. The rule thus announced in Parker's case is unquestionably correct.

A party charged alone of manslaughter could not be convicted upon evidence which would show murder and not manslaughter, for though manslaughter be embraced in the charge of murder, yet they are two entire, separate, and distinct offenses. Murder is predicable upon malice, either express or implied. Malice is not a constituent element

of manslaughter, and manslaughter is predicable upon there being adequate cause occasioning the voluntary homicide. In such a case as Parker's it was clearly radical error for the court to charge as was done. The rule is otherwise as between murder of the first and second degrees, where the party is on trial for murder in the second degree.

In McLaughlin's case, 10 Texas Court of Appeals, 340, where defendant on his first trial had been convicted of murder in the second degree, he objected on his second trial to all evidence tending to prove the killing upon express malice, or which would tend to prove murder in the first degree. But it is held there that the objection was properly overruled. In the opinion the court said: "It is logically impossible to prove express malice without proving malice, and if the killing be upon malice, the killing is murder."

In Baker v. The State, 4 Texas Court of Appeals, 223, it is held that a defendant on trial for murder in the second degree is not entitled to an acquittal because the evidence against him would sustain a conviction for murder in the first degree. Smith v. The State, 22 Texas Ct. App., 316; Powell v. The State, 5 Texas Ct. App., 235; Blocker v. The State, 27 Texas Ct. App., 16. It is no defense to an indictment that the evidence shows that the defendant committed a higher offense than that charged. Commonwealth v. Andrews, 132 Mass., 263. The court did not err in refusing or declining to instruct the jury that they should acquit defendant if they found from the evidence that he had committed a murder of the first degree—that is, one upon express malice.

Defendant's second bill of exceptions was reserved to the ruling of the court in permitting the witness Zilla Fuller to be recalled, after she had been discharged from the witness stand, for the purpose of laying a predicate to impeach her by showing that she had testified to certain facts on a *habeas corpus* trial differently from what she testified as a witness on this trial. There was no error in this ruling. Harvey v. The State, 37 Texas, 365; Treadway v. The State, 1 Texas Ct. App., 668. In this connection we will examine plaintiff's fourth bill of exceptions, which shows that the witness Wynne was called to prove the contradictory testimony of the said witness Zilla Fuller, and was allowed to testify, over objection, that said witness did not testify on the *habeas corpus* trial that the deceased Hugh Ingraham, at the time her father shot and killed the deceased, was about to shoot her father. The objection to the introduction of this testimony was that no proper predicate had been laid for its introduction, and because the witness Zilla Fuller, when a witness upon the stand, was asked the question if she did not testify on a *habeas corpus* trial that deceased Hugh Ingraham was about to shoot her father at the time her father shot and killed him, and she answered that she did not recollect it.

"It is no longer an open question that a witness who testifies that he has no recollection of having made the contradictory statements may

be impeached by proof of such contradictory statements." Levy v. The State, 28 Texas Ct. App., 203; Weir v. McGee, 25 Texas Sup., 21; Johnson v. Brown, 51 Texas, 65; Bressler v. The People (Ill. Sup.), 3 N. E. Rep., 521; Ray v. Bell, 24 Ill., 451; Wood v. Shaw, 48 Ill., 273; Williams v. The State, 24 Texas Ct. App., 637. The court did not err in either particular mentioned in the two bills of exception.

Defendant's third bill of exceptions was to the admission over his objection of the testimony of E. L. Tremble, to the effect that on the morning of the homicide, at his house, he had a conversation with the deceased; that deceased told him he had nothing against the defendant; that he wanted to be friendly with him; that he did not appear to be mad or angry with defendant; that he wanted no trouble with him; to which testimony defendant objected, because said defendant had not called for this conversation or any part of it, and because defendant had not been informed of said conversation prior to the homicide, which objection was overruled. We are of opinion that under the rule as now established in this State the evidence was inadmissible.

The rule is laid down in Brumley's case, 21 Texas Court of Appeals, 222, to the effect that everything that could operate on the mind of the defendant could be proved, but you can not give in evidence the declarations or acts of the deceased which never came to the knowledge of the defendant, because they could have no influence one way or another upon his mind, and could neither aggravate nor reduce the crime. This same doctrine is reaffirmed in Johnson v. The State, 22 Texas Court of Appeals, 206, and Ball v. The State, 29 Texas Court of Appeals, 107.

Several bills of exceptions were reserved to the remarks made by the district attorney in his closing argument to the jury. By a bill of exceptions it is shown that the district attorney said to the jury in his closing address: "The defendant in this case has brutally murdered Hugh Ingraham. He killed him because he was a poor man, wouldn't work, and he married his (defendant's) daughter. Yes, gentlemen, this was his motive. It is the only motive he had, and it is known all over this country."

Again (bill of exceptions number 6), he said: "Hugh Ingraham violated no law, did no wrong, gentlemen, when he married defendant's daughter. His marriage was a God-given right. He violated no law, for he had a written order for the license, signed by the darling of his heart."

In bill of exceptions number 7 he is quoted as saying: "The defendant's lawyers have called the dead man a devil. This is an old dodge, gentlemen. Cases like this have occurred in Van Zandt County before, and defendants' lawyers in those cases have got their men clear by denouncing the men as devils. If you acquit this defendant, gentlemen,

Van Zandt County will run in blood. The foundations of the republic will be sapped, and the government which our fathers fought, bled, and died for will be wrecked." Somewhat similar arguments to that used in the last above quotation were condemned by this court in Conn's case, 11 Texas Court of Appeals, 391. See, also, Stone v. The State, 22 Texas Ct. App., 185; Crawford v. The State, 15 Texas Ct. App., 501. An attorney is not warranted in asserting a fact not in evidence, which is prejudical to the defendant. Clark v. The State, 23 Texas Ct. App., 261; Laubach v. The State, 12 Texas Ct. App., 583. It is unnecessary to cite other authorities, though many others might be found to the same tenor and effect in our decisions.

Again, by defendant's eighth bill of exceptions it is shown that the district attorney in his closing argument used the following language: "This is not a case which calls for mercy at the hands of the jury. Mercy has already been extended to the defendant by the verdict of the former jury. Had not the State's case been compromised by the verdict of the former jury, I would have a case of murder in the first degree. You can not convict of murder in the first degree as it is, but I do ask you to duplicate the verdict of the former jury. There is nothing less in this case than murder in the first degree, and I know it."

Our Code of Criminal Procedure (article 783) expressly provides, that "the effect of a new trial is to place the cause in the same position it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." In House v. The State, 9 Texas Court of Appeals, 567, it was held that a former conviction that had been set aside affords no presumption of guilt, and prosecuting officers are prohibited by statute from alluding thereto in argument at a subsequent trial. See, also, Hatch v. The State, 8 Texas Ct. App., 416; Moore v. The State, 21 Texas Ct. App., 666; The State v. Balch, 31 Kans., 465; 2 Pac. Rep., 609; 9 Crim. Law Mag., 637–741. The argument of the district attorney in this particular constitutes reversible error, if there were no other error in the case.

A special bill of exceptions was reserved to the following charge given by the court to the jury, to-wit: "If at the time it reasonably appeared to the mind of the defendant by the acts of H. L. Ingraham, or by his words coupled with his acts, that it was the then present purpose of said H. L. Ingraham to inflict upon defendant death or serious bodily injury, and such conduct on the part of deceased raised in the mind of defendant a reasonable expectation or fear of death," etc. The defendant has the same right in acting upon reasonable appearances of danger to defend himself against appearances of serious bodily harm as he has against appearances that indicate his death. Hunni-

cutt v. The State, 18 Texas Ct. App., 500; 20 Texas Ct. App., 634; Penal Code, art. 574; Meuly v. The State, 26 Texas Ct. App., 274; Williams v. The State, 22 Texas Ct. App., 497; High v. The State, 26 Texas Ct. App., 545.

There are other errors complained of, but we do not deem it necessary to discuss them. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., being disqualified, did not sit in this case.