## JOE VICKERS V. UNITED STATES.

No. 750, Ind. T.    Opinion Filed November 19, 1908.

(98 Pac. 467.)

1.  RAPE—Indictment—Sufficiency. An indictment for rape under section 911, Ind. T. Ann. St. 1899 (Mansf. Dig. sec. 1568), that omits to allege that the accused "did carnally know, forcibly and against her will," or at least allege "sexual intercourse against the will and without the consent" of the female, is fatally defective.

2.  INDICTMENT AND INFORMATION—Certainty and Particularity. In framing an indictment the general rule is "that the offense shall be so described that the defendant may know how to answer it, the court what judgment to pronounce, and that a conviction or acquittal on it may be pleaded in bar of another indictment for the same offense."

3.  RAPE—Punishment—Capital Punishment. A verdict of guilty "without capital punishment" may be rendered in a rape case under Act Cong. Jan. 15, 1897, c. 29, 29 Stat. 487 (U. S. Comp. St. 1901, p. 3620), even if there are no mitigating or palliating circumstances.

4.  CRIMINAL LAW—Instructions—Punishment. It is the duty of the trial court to instruct the jury that if they shall find a verdict of guilty of rape they may qualify their verdict by the words, "without capital punishment," no matter what the evidence may be.

5.  INDIANS—Proof of Race—Punishment. In this case the evidence should affirmatively show that the defendant is not an Indian before the question of the death penalty could be submitted to the jury.

6.  RAPE—Instructions—Grade of Offense. Where the proof is inconclusive as to the consummation by penetration, and the proof is evident as to assault with intent to commit rape, it is the duty of the trial court to instruct the jury of their right to convict of the lower offense.

7.  SAME—Evidence—Sufficiency. A conviction of rape with sentence of death cannot be based on contradictory testimony of the prosecutrix as to whether or not there was penetration.

8.  CRIMINAL LAW—Evidence—Other Offenses. Evidence is admissible that tends directly to prove the defendant guilty, although it may also tend to prove a distinct felony and thus prejudice the accused.

9.  SAME. On a trial for rape, evidence of other independent crimes, such as burglary and larceny, committed by defendant in another state, is inadmissible.

10. SAME—Misconduct of Counsel. Where the language used by the Assistant United States Attorney in his opening statement is calculated to prejudice the accused, and proper objection is made and

overruled by the court, and exception taken, the question will be reviewed by this court, but not otherwise.

11. NEW TRIAL—Argument of Prosecuting Attorney. When the remarks of the Assistant United States Attorney to the jury in a rape case appeal to their fears or vanity and tend to coerce and cajole them, it is good grounds for a new trial, and the motion for new trial should have been granted.

12. SAME. Where the Assistant United States Attorney in his argument to the jury went outside of the record and appealed to the passions and prejudices of the jury, and objection was made and overruled, the strength of the testimony against the defendant will be considered, and, if the improper statements may have determined the verdict, a new trial will be granted.
(Syllabus by the Court.)

*Error to the United States Court for the Western District of the Indian Territory, at Muskogee; William R. Lawrence, Judge.*

Joe Vickers was convicted of rape, and brought error to the United States Court of Appeals for the Indian Territory, whence the case was transferred under the enabling act to the Supreme Court of Oklahoma, and from that court to the Criminal Court of Appeals. Reversed and remanded.

*Lynn W. Culp, John Watkins, J. E. Wyand,* and *George K. Powell,* for plaintiff in error.

*William M. Mellette,* U. S. Atty. *Chas West,* Atty. Gen. and *W. C. Reeves,* Asst. Atty. Gen., for the United States.

DOYLE, JUDGE. The plaintiff in error was indicted in the United States Court in the Indian Territory for the Western District of said territory, sitting at Muskogee, at the October term, 1904, for the crime of rape, alleged to have been committed within said jurisdiction on the 16th day of May, 1904, upon one Bessie Dunbar. Said indictment was returned in open court on the 4th day of October, 1904. Defendant was duly arraigned, and pleaded not guilty, and was tried upon said indictment at the January, 1905, term of said court. The jury returned a verdict finding the defendant guilty of rape, as charged in said indictment. Whereupon the defendant filed his motion for a new trial, which motion was, on the 7th day of April, 1905,

sustained by the court, and a new trial ordered. Thereafter, at the January, 1906, term of said court, a second trial was had, and on the 11th day of January, 1906, the jury in said case returned the following verdict: "We, the jury, find the defendant guilty of rape in the manner and form as charged in the indictment." On the 10th day of February, 1906, the court overruled defendant's motion for a new trial. Whereupon the defendant moved the court in arrest of judgment upon said verdict for the reason that the venue had not been proven, which motion was denied, and the court then and there sentenced defendant to be hanged on the 20th day of April, 1906, at the city of Muskogee. And thereafter, on the same day, to wit, the 10th day of February, being a day of the regular January, 1906, term of said court, in the afternoon of said day, the defendant was again brought before the court, and was asked by the court if he had anything to say why the judgment of the court should not be pronounced upon him, the court explaining to the defendant the nature of the charge, the result of the trial, and the meaning of the verdict; and then and there, over defendant's objection, again sentenced defendant to be hanged on the 20th day of April, 1906.

On the 12th day of April, 1906, a writ of error was allowed to the United States Court of Appeals for the Indian Territory, and this case was pending in said court when Oklahoma was admitted into the Union as a state. It was then removed to the Supreme Court of Oklahoma, by virtue of the provisions of the enabling act and the Constitution and laws of Oklahoma, and was duly transferred to this court by virtue of section 170, art. 7, of the Constitution of Oklahoma, and chapter 28, Sess. Laws, 1st Sess. State Legislature of Okla., the same being entitled "An act creating a criminal court of appeals, and defining the jurisdiction of said court,," approved May 18, 1908 (Laws 1907-08, p. 291).

Numerous assignments of error are presented by the petition, and are argued in the briefs; such as the verdict is not supported by sufficent evidence, error of the court in admitting evidence of offenses other than the one charged, improper conduct of the United States attorney in arguing the case, errors in ad-

mitting incompetent testimony; in excluding competent testimony, in failing to furnish the list of jurors who were to hear the case, in overruling motion for a new trial, and in not sustaining motion in arrest of judgment, and also in resentencing defendant. The main contention of the defendant in the oral argument of the case before this court, by Mr. Powell, his counsel, was: First, that there was not sufficient evidence to warrant the conviction; second, that it was reversible error to admit evidence of other offenses; third, that the misconduct of the United States attorney was such that the defendant was denied a fair and impartial trial.

We have carefully examined the record, and, in the consideration of this case, we have tried to exercise that degree of caution and care that a proper administration of the criminal laws demand of all courts in all cases of life and death. The record showing the indictment on which he was tried (omitting the formal parts) reads as follows:

"In the United States Court, in the Indian Territory, for the Western District of said Territory, at the October Term, A. D. 1904. United States, Plaintiff. vs. Joe Vickers, Defendant. Indictment for rape. The grand jurors of the United States of America, duly selected, impaneled, sworn, and charged to inquire within and for the body of the Western District of the Indian Territory in the name and by the authority of the United States of America, upon their oaths, do find, present and charge that one Joe Vickers on the 16th day of May, A. D. 1904, within the Western District of the Indian Territory, in and upon one Bessie Dunbar, a female, forcibly and feloniously did make an assault and her, the said Bessie Dunbar not being then and there the wife of him, the said Joe Vickers, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America. E. L. Kistler, Assistant United States Attorney, Western District of Indian Territory."

It is beyond the comprehension of this court to understand how the indictment in this case could be considered sufficient by the trial court to sustain the judgment and sentence imposed. If we except the allegation of felonious assault, this indictment

does not allege a single act which enters into and constitutes any one of the essential elements of the crime of rape. Section 911, Ind. T. Ann. St. 1899 (Mansf. Dig. § 1568), defines the offense of rape as follows: "Rape is the carnal knowledge of a female forcibly and against her will." This indictment omits to allege the following elements of the offense as above defined: That he feloniously did ravish, and carnally know forcibly, and against the will of said female; or at least set forth sexual intercourse committed against the will, and without the consent of the female. This omission renders the indictment fatally defective. Under any rule of construction it is not sufficient. It does not follow the language of the statute. The fact charged as the offense is not stated with a sufficient degree of certainty to enable the court to pronounce judgment upon a conviction, according to the right of the case; and it is not sufficiently certain to enable the accused to plead the judgment that may be given upon it, in bar of another prosecution for the same offense. It denies to defendant his constitutional right to be informed of the nature and cause of the accusation. A defendant should be clearly informed in the indictment of the exact and full charge made against him. The general rule, to which there are but few exceptions, is that all the material facts and circumstances comprised in the definition of the offense must be alleged. This indictment does not, in any way, charge a felonious ravishment. It is our opinion that the charging part of this indictment is not in substance sufficiently specific to put the defendant fairly on trial for the offense sought to be charged.

Error in the record is not presumed; there should be at least some evidence to show it. However, before a court of last resort affirms a judgment of conviction in a capital case, it should appear affirmatively, from the record, that every step necessary to the validity of the sentence has been taken. We believe, from our examination of the record, that this case has been tried and submitted to the jury upon an erroneous theory, prejudicial to the rights of the defendant, and which had a controlling

influence upon the trial and the result. Although not urged upon the trial, nor here, we deem it our duty to pass upon and decide this question, as that which the law makes essential in proceedings involving the deprivation of life cannot be dispensed with or affected by consent of the accused, much less by his mere failure, when on trial, to object to unauthorized methods. It seems that the court did not instruct the jury as to their right to return a qualified verdict. While the Arkansas procedure was in force in that jurisdiction, the federal laws controlled in fixing the penalty in a case of this kind, and provided:

"That in all cases where the accused is found guilty of the crime of murder or of rape, under section five thousand three hundred, thirty-nine, and five thousand three hundred, forty-five, Revised Statutes, the jury may qualify their verdict by adding thereto, 'without capital punishment,' and whenever the jury shall return a verdict, qualified as aforesaid, the person convicted shall be sentenced to imprisonment at hard labor for life." (Act. Jan. 15, 1897, c. 29, 29 Stat. 487 [U. S. Comp. St 1901, p. 3620]).

It was the duty of the trial court to instruct the jury that, in case they found the defendant guilty of rape, they might qualify their verdict by the words "without capital punishment," no matter what the evidence was. In the case of *Winston v. United States,* 172 U. S. 303, 19 Sup. Ct. 212, 43 L. Ed. 456, the syllabus is as follows:

"Under the act of Congress of January 15, 1897, c. 29, § 1, by which, in all cases where the accused is found guilty of the crime of murder, the jury may qualify their verdict by adding thereto 'without capital punishment,' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life, the authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court or the jury is of opinion that there are palliating or mitigating circumstances, but it extends to every case in which, upon view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment."

And in *Calton v. Utah,* 130 U. S. 83, 9 Sup. Ct. 435, 32 L. Ed. 870, a sentence of death upon conviction of murder in the

first degree was reversed, because the judge had not called the attention of the jury to their right, under the statute, to recommend imprisonment for life, at hard labor in the penitentiary, in place of the punishment of death, and, without a recommendation to that effect, the court could impose no other punishment than death. The defendant was entitled to have the question of a qualified verdict submitted to the jury in this case.

To authorize a judgment, the verdict in a criminal case must respond to the issues submitted to the jury. Its sufficiency is determined by ascertaining whether it is responsive to and covers the offense charged in the indictment. 12 Cyc. 690. It must contain within its system, or by reference to the indictment, every material element of the crime. Where an indictment shows a crime, a general verdict of guilty in manner and form as charged in the indictment is a special finding of each element of the crime as charged, and is sufficient. Reference to the indictment is limited to the crime therein charged. In this case, while the indictment is labeled, "Indictment for Rape," the only offense charged was assault, and the verdict was a verdict merely of assault and not of rape, and, as a general verdict, it was not sufficient to authorize the judgment and sentence. The court did not submit to the jury whether defendant was guilty of assault with intent to commit rape. If the indictment had properly charged the offense of rape, this offense would have been included also, and whenever the evidence, as in this case, warrants it, the duty of the court is to instruct the jury upon the other offenses included in the crime charged. *Pratt v. State,* 51 Ark. 167, 10 S. W. 233.

The next question that arises is, did the trial court have the power and authority to inflict the death penalty under the statutes and evidence in this case? An act of January 15, 1897, provides:

"That any Indian who shall commit the offense of rape within the limits of any Indian Reservation, shall be punished by imprisonment at the discretion of the court. So much of the ninth section of chapter three hundred and forty-one of the acts

of the year 1885 as is inconsistent herewith is herewith repealed." (29 Stat. 487, c. 29; Fed. Stat. Ann. vol. 6, p. 759).

Under the foregoing provision of the federal laws, we believe it was necessary for the evidence to show that the defendant was not an Indian before a question of the death penalty could be submitted to the jury. In the case of *Lucas v. United States*, 163 U. S. 612, 16 Sup. Ct. 1168, 48 L. Ed. 282, Justice Shiras, in speaking for the court, among other things, said:

"The view of the trial court, therefore, seems to have been that a finding of the fact that the deceased was a negro established the jurisdiction of the court by reason of a presumption that a negro, though found within the Indian Territory, was not a member of the tribe. In so holding, we think the court erred. If there is any presumption in such a case, it rather is that a negro found within the Indian Territory, associating with the Indians, is a member of the tribe by adoption. * * * We think, therefore, that the court erred in instructing the jury that they had a right to find the deceased was not a member of the Choctaw Nation from the mere fact that he was a negro."

Under the rule quoted above, it was necessary that the evidence show that the defendant was not an Indian, before a question of the death penalty could be submitted to the jury. The record fails to show any evidence upon this question. This being a case of life and death, where, against an express exception in the law, with no evidence except by inference only, the court assumed, in fixing the death penalty, that the defendant was not an Indian. We believe the nature and circumstances of this case strongly re-enforce the rule of evidence, as enunciated in the case of *Lucas v. United States, supra;* and in the application of that rule, in weighing the evidence offered, the court was without power or authority, under the law, in passing the sentence of death upon the defendant.

In the case of *Crain v. United States*, 163 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, Justice Harlan, delivering the opinion of the court, says:

"The record of the conviction should show distinctly, and not by inference merely, that every step involved in due process

of law and essential to a valid trial was taken in the trial court, otherwise the judgment will be erroneous. The defendant may be guilty, and may deserve fully the punishment imposed upon him by the sentence .of the trial court, but it were better that he should escape altogether than that the court should sustain a judgment of conviction of an infamous crime where the record does not clearly show that there was a valid trial."

Under the assignments of error, the principal contention of defendant is that there was not sufficient evidence to warrant the conviction of defendant of the crime sought to be .charged, and that the evidence only showed an assault with intent to commit rape. While it is a rule approved by this court that where there is any evidence to support a conviction, or where the evidence is conflicting, the appellate court will not review the record· for the purpose of ascertaining or determining the weight or sufficiency of the evidence, and ordinarily the verdict approved by the trial court will be allowed to stand, but cases of this character have always been held an exception to such rule, and even exceptional in this and other particulars from the rules of, procedure in ordinary criminal cases. We have examined and fully considered all the testimony as shown by transcript, and we are constrained to believe that the evidence is not sufficient to show that the assault to which prosecutrix testified was consummated.

To summarize the testimony, it shows that prosecutrix is a white woman, 21 years of age, married and living with her husband on a farm about 5 miles south of Wagoner, Ind. T., in a loghouse, with a small loghouse used as a kitchen adjoining. On. the day charged in the indictment the defendant, a negro boy about 17 years old, appeared at this place about 1 p. m. The husband of the prosecutrix was working in a field about a quarter of a mile distant from the house. There was another house about. 150 yards· distant from the home of prosecutrix where some of her relatives resided. The defendant was carrying a Winchester rifle and a small bundle. Meeting prosecutrix in the yard, by threats he forced·her to go into the kitchen, and there by force she ·states he ravished her. He then ran away.

Ind. T. Ann. St. § 912 (Mansf. Dig. § 1569), provides: "Proof of actual penetration into the body shall be sufficient to sustain an indictment for rape." The testimony of prosecutrix is all that is offered by the government to prove the offense. She testifies that fear did not cause her to submit, and that defendant tried to throw her down but could not. Taking into consideration the relative strength of the parties, and the fact that prosecutrix remained standing, her testimony as to her position when the act of penetration occurred, the brief time that defendant was there, and the other circumstances as shown by her testimony, this, together with the fact that no evidence was offered to show that she was otherwise injured or bruised in any way, or that her hair was disheveled, or that her clothes were torn, and the fact that no outcry was made, leads us to believe that prosecutrix was mistaken and misapprehended the real fact. The force used must have been such as might reasonably be sufficient to overcome her resistance. Under all the circumstances as shown by the evidence, the testimony of the prosecutrix does not import absolute verity. Her person and her feelings had been outraged, and her virtue violated by a lecherous degenerate whose acts and intention, at least, were such that no punishment short of the extreme could approach the adequate, and the assault was such as might reasonably cause her to honestly believe that her person had been polluted and her body penetrated. Prosecutrix's testimony showing the vulgar remark of defendant confirms our conclusion. The history of criminal trials is replete where witnesses have, through malice, misapprehension, mistake, or weakness of mind, made declarations that were inconsistent with the actual facts. In this case we are of the opinion that the evidence is not sufficient to show that the offense was consummated.

Several assignments of error are based upon the action of the court in admitting, over the objections of the defendant, evidence showing, or tending to show, that the defendant had been guilty of offenses other than the one charged in the indictment. The evidence of the witness Dyer was to the effect that about the hour of 12 o'clock on September 12th the defendant

was at his place, this being about a mile distant from the home of prosecutrix, and that he, together with his wife, were at that time leaving for Wagoner. That upon their return that day he found that his house had been burglarized, and that a Winchester rifle, some clothes, and a small sum of money had been taken. Mrs. Dyer's evidence was the same. Other evidence showed that this Winchester rifle was the Winchester used in the assault upon prosecutrix. We believe all of this testimony was proper for the purpose of identification, and it was relevant to show that the defendant was near the place where the crime was committed at that time. All of this testimony was connected with, and had a natural tendency to corroborate, the direct evidence in the case.

"Evidence on the question of identity of the prisoner is permitted to take a broad range. Any fact which shows the acquaintance and familiarity of the witness testifying to the identity of defendant, is admissible." (Cyc. vol. 12, p. 592.)

Evidence covering the commission of another offense is also admissible when two crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. In support of this rule, see: *Mason v. State,* 42 Ala. 532; *State v. Folwell,* 14 Kan. 105; *State v. Wentworth,* 37 N. H. 196. It is also relevant to show that the accused was seen near the place of the crime, although he does not claim an alibi. Cyc. vol. 12, p. 399. Evidence covering the commission of another offense is also received to show the identity of the person, local proximity, or other facts calculated to connect the accused with the commission of the offense. *State v. Kelley,* 65 Vt. 531, 535, 27 Atl. 203, 36 Am. St. Rep. 884; *Halleck v. State,* 65 Wis. 147, 26 N. W. 572; *Commonwealth v. Choate,* 105 Mass. 451.

In *People v. Rogers,* 71 Cal. 565, 12 Pac. 679, the defendant was convicted of murder. At the trial the prosecution, against the objection of the defendant, introduced evidence tending to show that the defendant gained an entrance to the house, where the crime was committed, with instruments which had been stolen from a neighboring house at the time of a prior burglary,

and that the homicide was committed with a pistol which had been taken at another prior burglary. Held, that the evidence was admissible, notwithstanding it tended to connect the defendant with the perpetration of other crimes.

The evidence of the witness Herchell Short was to the effect that defendant committed the offense of burglary or larceny, or both, in the state of Kansas, subsequent to the time alleged that the offense charged was committed. Defendant moved the court to exclude this testimony from the consideration of the jury, as tending to show an offense which had been committed by defendant in the state of Kansas, which motion was by the court overruled. This holding of the court, we believe, was error. In Wharton's Am. Crim. Law, the author, among other things, says: "It is under no circumstances admissible for the prosecutiou to prove independent crimes, even though of the same general character, except when found strictly within the exceptions above stated." The exceptions alluded to by the author, and as hereinbefore stated, would not embrace the evidence now under consideration. See, also, 12 Cyc. p. 406, and cases cited from almost every state.

In the case of *Boyd v. United States,* 142 U. S. 450, 12 Sup. Ct. 292, 35 L. Ed. 1077, Justice Harlan, delivering the opinion of the court, among other things, says:

"The principal assignments of error relate to the admission against the objection of the defendants, of evidence as to several robberies committed prior to the day when Dansby was shot, and which, or some of which at least, had no necessary connection with, and did not in the slightest degree elucidate, the issue before the jury, namely, whether the defendants murdered John Dansby on the occasion of the conflict at the ferry. * * * We are constrained to hold that the evidence as to the Brinson, Mode, and Hall robberies was inadmissible for the identificauon of the defendants, or for any other purpose whatever, and that the injury done the defendants in that regard was not cured by anything contained in the charge. Whether Standley robbed Brinson and Mode, and whether he and Boyd robbed Hall, were matters wholly apart from the inquiry as to the murder of Dansby. They were collateral to the issue to be tried. No notice was given

by the indictment of the purpose of the government to introduce proof of them. They afforded no legal presumption or inference as to the particular crime charged. Those robberies may have been committed by defendants in March, and yet they may have been innocent of the murder of Dansby in April. Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death. Upon a careful scrutiny of the record we are constrained to hold that, in at least the particulars to which we have adverted, those rules were not observed at the trial below. However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."

This principle has been approved in the case of *Hall v. United States,* 150 U. S. 80, 14 Sup. Ct. 22, 37 L. Ed. 1003. See also, *Waight v. United States,* Fed. Cas. No. 17,042; *People v. Carpenter,* 136 Cal. 391, 68 Pac. 1027; *State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *People v. Bennett,* 122 Mich. 281, 81 N. W. 117; *State v. Hale,* 156 Mo. 102, 56 S. W. 881.

Another error assigned, and one which we regard as fatal to the judgment below, was the refusal of the court to grant the defendant's motion for a new trial, based on the ground of certain misconduct of the Assistant United States Attorney which was prejudicial to the rights of the defendant. The record shows that the Assistant United States Attorney, who prosecuted this case, in his opening statement to the jury, stated: "That his reason for not permitting a colored man to sit upon the jury was that he did not want to compel them to sleep and eat with the negro." Also his further statement to the jury, "That the defendant had been guilty of burglary and larceny but a short time before he had committed the crime with which he stood charged, and that after the crime of rape had been committed by him, and he fled into the state of Kansas, he had been arrested for burglary committed in that state." The record further shows that the Assistant United States Attorney, in his closing address to

the jury, stated and argued as follows: "I ask you, gentlemen, to convict the defendant as charged in the indictment, for I know if you do, your verdict will be flashed across the wires and be published in the newspapers throughout the length and breadth of this earth, and the colored race will throw their hats into the air." All of which remarks were duly objected to, and exceptions saved.

We believe the action of the prosecuting officer as above set forth was highly improper and constituted gross misconduct on his part. It manifested a disposition to disregard the legal rights of the defendant, and exhibited a purpose to ignore the plainest principles of law in the trial of a capital case. Such statements, coming from the Assistant United States Attorney at the time, and in the manner made, must have been highly prejudicial to the substantial rights of the defendant. The only purpose in the course pursued by the prosecuting officer was to appeal to the pride and passion, and thereby prejudice the jury against the defendant. If it was possible to poison the minds of the jury against the defendant, this conduct was well calculated to do so, and in so doing the Assistant United States Attorney abused his privilege as a public prosecutor. In the case of *People v. Fielding,* 158 N. Y. 542, 53 N. E. 497, 46 L. R. A. 641, 70 Am. St. Rep. 495, the court, in part, say:

"While public prosecutors should not be restricted in 'fair argument, comment or appeal' to the jury, they should not be allowed to state facts not proved, or to make inflammatory appeals to passion and prejudice, or to threaten the jury with popular denunciation, or to tell the jurors that they would commit the 'unpardonable sin' if they failed to convict the defendant."

The probable effect of such appeals is to divert the attention of the jury from the evidence, prejudice them against the defendant, and prevent the exercise of sound dispassionate judgment upon the merits of the case. The approval of the trial court intensifies. the effect of such prejudicial remarks, and subsequent instructions to disregard the remarks of counsel may not cure the injury already done.

After defendant's counsel had several times objected to such remarks, which the prosecutor persistently continued to make, with the approval of the court, he need not continue to make objection to such remarks, but the subsequent remarks will be held subject to the exceptions already taken. "Where the remarks of the district attorney prejudice the minds of the jury, for that reason alone the judgment should be reversed." *Brown v. Swineford,* 44 Wis. 282, 28 Am. Rep. 582; *Hall v. United States,* 150 U. S. 76, 14 Sup. Ct. 22, 37 L. Ed. 1003. It is sufficient that extra professional stateents of counsel may gravely prejudice the jury and effect the verdict. *Tucker v. Henniker,* 41 N. H. 317; *State v. Smith,* 75 N. C. 306; *Fuller v. State,* 30 Tex. App. 339, 17 S. W. 1108.

The overnourished zeal of counsel, displayed in the attempt to seek conviction for crime, frequently calls for condemnation on the part of appellate courts, especially when in the closing argument to the jury the attorney for the state travels outside the evidence for his subject matter, or indulges in truculent abuse of the accused. *Smith v. People,* 8 Colo. 459, 8 Pac. 920; *Martin v. State,* 63 Miss. 505, 56 Am. Rep. 813; *Garlitz v. State,* 71 Md. 293, 18 Atl. 39, 4 L. R. A. 601.

Where the county attorney, in his closing argument to the jury, repeatedly used abusive and improper language, calculated to create prejudice against the defendant, and the court, after objection made, fails to check him, and to instruct the jury to disregard his remarks, the defendant is entitled to a new trial. *State v. Baker,* 57 Kan. 541, 46 Pac. 947.

A reference to other offenses committed by a defendant on trial, but of which other offenses there is not evidence, is improper. *State v. McCool,* 34 Kan. 617, 9 Pac. 745.

In determining the effect of improper statements made by an attorney in the closing argument to the jury, the strength of the testimony against the party complaining will be considered, and, if the improper statements may have determined the verdict, a new trial will be granted. *State v. Shelton,* 6 Kan. App. 662, 49 Pac. 702.

When remarks of the prosecuting attorney to the jury, by appeal either to their fears or vanity, tend to coerce and cajole them, then a verdict of conviction is error. *People v. Lange,* 90 Mich. 454, 51 N. W. 534.

On a trial for murder, where the district attorney, in summing up, by his remarks, appeals to the feelings of the jury, so as to probably coerce them into finding a verdict against the defendant, and it was reasonably doubtful whether he had a fair trial, judgment of conviction will be reversed. *People v. Mull,* 167 N. Y. 247, 60 N. E. 629; *People v. Kramer,* 117 Cal. 647, 49 Pac. 842, expressly holds that improper arguments of counsel, not based upon the evidence, in an address to the jury, are not justified by the fact that opposing counsel had already committed like impropriety.

Where, in a prosecution for burglary, an officer testified that he had searched the prisoner's trunk, it was reversable error for the prosecution to ask how he came to make the search, knowing that the answer would show that the prisoner was suspected of another theft, though the court sustained an objection to the question after the officer's answer to that effect had been given.

In *People v. Valliere,* 127 Cal. 65, 59 Pac. 295, the court, in part, say:

"In my opinion the examination was incurable, and the statements sustained in the closing address were an outrage against justice, which should not be allowed to pass."

In the case of *People v. Aiken,* 66 Mich. 460, 33 N. W. 821, 11 Am. St. Rep. 512, the court, in part, says:

"It must also be remembered that, however heinous the crime, and however difficult it may be to establish it by the usual and approved means of procedure, and no matter how firmly the public prosecutor and the community at large may be satisfied of the guilt of the accused, and even though in fact he may be guilty, the rules and methods of trial, permitted to be relaxed or disregarded in his particular case, with perhaps the laudable object and desire that justice may be done, must nevertheless, as a natural consequence of the ways of our jurisprudence,

appear hereafter, as so relaxed or disregarded, as precedents to be used against all persons accused of crime, to vex the innocent as well as the guilty. There is therefore no safety and justice in allowing the supposed merits of a particular case to override and set aside, even for a moment, the barriers that our Constitution and laws have hedged about the citizen when arraigned and put upon trial for an alleged crime."

A public prosecutor is presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and by vituperation of the prisoner, and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and seeks no conviction through the aid of passion, sympathy, or resentment. The only way to secure fair trials is to set aside the verdicts so procured.

It is a matter of the greatest concern to care for and protect from violence and outrage the womanhood of our country. The protection of the mothers, wives, and daughters of our land, and the preservation of the sanctity and security of our homes, all depend upon the certainty and promptness with which cases of this character shall be visited with the just penalty of the law, and it is the duty of the courts and juries to give it effect. But a criminal trial should be an intelligent, conscientious investigation under the laws, with every favor for life, and even reasonable doubt as to the facts, in favor of the prisoner. The law of the land guarantees to every one accused of crime, regardless of race or color, whether of high or low degree, whether rich or poor, a fair and impartial trial. Whether the defendant be innocent or guilty, in our opinion he has not been adjudged guilty in accordance with law, because he has not had a fair and impartial trial, which the law prescribes for a person charged with crime.

The record discloses other rulings, arising during the conduct of the trial, that would be difficult to defend. The trial of this case might well be termed a Tragedy of Errors. The questions already discussed are sufficient to dispose of this case,

and it should be submitted to another jury to the end that all competent proof may be given in the regular and orderly way, and all the questions involved presented in that temperate and dispassionate manner which is so important in the trial of a capital case, and so essential to the protection of all the rights of the accused.

It is the opinion of this court that, for the reasons set forth herein, the judgment of the United States court for the Western District of the Indian Territory is hereby reversed, the cause remanded, and a new trial ordered.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.