## OTIS GREEN v. STATE.

No. A-6185.    Opinion Filed April 14, 1928.
(266 Pac. 512.)

Eaton & Cavanaugh, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted, and in accordance with the verdict of the jury sentenced to pay a fine of $500 and serve a sentence of 5 months in the county jail, on an information charging that the defendant unlawfully and wrongfully had in his possession certain intoxicating liquors, to wit, 8 gallons corn whisky, with the intention on the part of him of selling, bartering, giving away, and otherwise disposing of the same, in violation of the provisions of section 3605, Rev. Laws 1910.

To reverse the judgment the defendant has appealed to this court and has assigned as errors certain rulings of the court and misconduct on behalf of the county attorney in his argument.

The testimony on behalf of the state is, in substance, as follows: George Bowman testified that he knew the defendant, Otis Green; that he saw the defendant on or about the 7th day of July, 1925, at what was called the "Hog Ranch," northeast of Beggs; they found some whisky close to his residence where he lives and south of the house something like a quarter of a mile. On cross-examination, the witness testified:

That defendant was not near the whisky when it was found; that the whisky was out in the timber; there were eight or nine gallons in a keg; there were footprints leading off from it toward the defendant's gate; the whisky and the tracks were not on the defendant's premises; we had a search warrant, but we did not search the premises where defendant lived; we used the search warrant on what was called the "Hog Ranch;" the whisky we found was something like a quarter of a mile from defendant's house; it was covered up with brush; the defendant told me this whisky did not belong to him; I would not swear it was his whisky; it was not on defendant's premises, but the tracks came from the gate; we followed the tracks to the whisky, but we did not measure the tracks; I have known the defendant 25 years; I got some direct information that the whisky was there; I don't know the names, not these oil men; I don't care to tell their names, it is not necessary.

Adam Le Wallen testified:

That he was at defendant's home the day preceding the arrest; the defendant was at home; I did not see anything at his house in the way of intoxicating liquors; they had a keg in the woods about a quarter of a mile south from his house; the keg was setting on the ground with a limb and tow sacks thrown over it; my brother and Mr. Green were with me; I suppose Mr. Green was in charge of the keg; he took us out there; we all took a drink; Green opening up the keg, and then I drank, and then one of my brothers drank; when we went there we helped him fix his car, and he asked us if we wanted a drink, and then took us up there.

On cross-examination the witness stated that:

From the time we left we knew we were going to get a drink of whisky; we did not know where it was; I had not seen the whisky before; I do not like to tell much about what we were there for; we were there the night before; we came by and got old man Hill and stopped at my place and taken some whisky and went over and pulled a drunk; I figured he did not get in, and I went over to see; old man Hill and several others were there the night before we put on the drunk; it was not my whisky; Green had it, he rode in the car with it; he brought it from home, I suppose.

In response to a question, the witness gave the following answer:

"Q. You own a still? A. I let him have it, it was a gasoline drum, it was not a whisky drum."

I had only been over to where the whisky was one trip; Ote Green and my brother was along; Ote Green did not say whose whisky it was.

Oscar Le Wallen, a witness for the state, testified in substance to the same facts as Adam Le Wallen. Fred Garrison also testified that he had received information as to what there was out near defendant's home; the whisky was not in the inclosure of the defendant, but was about a quarter of a mile from the house.

The defendant as a witness in his own behalf stated:

That he found the whisky out there the day before Le Wallen and his brother came over, and he took them over to where it was and they took a drink; when the Le Wallens came to my place I told them there was some whisky over there, and they went over there, and we had a drink; I did not know to whom it belonged.

On cross-examination, defendant stated:

I didn't get any drum from Le Wallen; I got the whisky we drank the night before out of that keg; I found the keg two days before we went over there; nobody was drunk at my place at any time; I don't know how the whisky came to be where it was.

On redirect examination, the defendant stated:

I have lived out there about 20 years.

The foregoing is, in substance, all the material evidence introduced by both the state and defendant. In addition to the usual assignment of errors, that the verdict is contrary to the law and evidence, and the overruling of motion for a new trial, it is argued that the court erred in admitting incompetent evidence and in permitting the county attorney, in closing the argument to the jury, to make prejudicial statements of matters outside of the record, and of such a character as would arouse the passion and prejudice of the jury against the defendant. The county attorney stating:

"Gentlemen of the jury, if the courts were allowed under the laws of this state to instruct a verdict of guilty in criminal cases, this is one case the court would be justified in doing so."

This statement was objected to by the defendant, and the court sustained the objection. Further in the argument the county attorney made this statement:

"Bring the Le Wallen boy to the stand. He told that he let him have a gasoline drum. I want counsel to tell me how he knew it. This defendant told him or somebody else told him. I want him to tell me how he knew it."

This statement was objected to by the defendant, and by the court overruled. Counsel for the defendant then stated:

"The defendant excepts to the remarks of the county attorney as highly prejudicial; I object to the remarks and argument of the county attorney upon the proposition that somebody must have told the defendant's counsel that the witness Le Wallen furnished a drum, or else he would not have known it."

By the Court: Overruled.

By Mr. Eaton: Exceptions.

County Attorney (proceeding) : This is just as much in the record as it can be. I know you were not deaf when you cross-examined him.

By Mr. Eaton: To which the defendant excepts as highly prejudicial.

The Court: Overruled.

Mr. Eaton: Defendant excepts.

County Attorney (proceeding) : I say let him tell how he knew about it. Here is what happened. Eaton's client or somebody told him he got the drum from Le Wallen and made this whisky.

Mr. Eaton: To which remark the defendant now excepts as highly prejudicial.

Mr. Eaton: Exceptions.

County Attorney (proceeding) : Gentlemen of the jury, you know counsel is entitled to argue the testimony and the law. You know a man has to get this information somewhere. If Joe dreamed it—

Mr. Eaton: I object to that as highly prejudicial.

The Court: Overruled.

Mr. Eaton: Exceptions.

The county attorney further in his argument made the following statement:

"The officers told you there had been complaint made to them by the people; that the oil field workers, the men working on the leases, had been getting drunk; that the men for whom they were working objected; they wanted their men to work; they had a right to make their men work and earn honest dollars."

Mr. Eaton: I object to that not based on any evidence in this case.

County Attorney: Gentlemen of the jury, I have been trying cases for a long time. I haven't much sense, but I have a memory. I will go with any lawyer, I don't care who he is, to the record as to what it is. I never go out of the record.

Mr. Eaton: We object to this based on no evidence offered here, highly prejudicial to the defendant.

A careful reading of all the evidence contained in the record in this case fails to disclose any evidence showing the statement contained in the county attorney's closing argument:

"That the oil field workers, the men working on the leases, were getting drunk. That the men for whom they were working objected. They wanted their men to work. They had a right to make their men work and earn honest dollars."

The record further discloses that, when the objections were interposed to the argument herein set forth by the county attorney, counsel for the defendant objected on the ground that it was not based on any evidence in the case, and that the county attorney in presenting it to the jury boasted of the time he had been trying lawsuits, stating "I haven't much sense, but I have a memory," and again asserting in the presence of the jury, "That I never go out of the record."

In the case of Vickers v. United States, 1 Okla. Cr. 452, 98 P. 467, this court said:

"A public prosecutor is presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and by vituperation of the prisoner, and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and seeks no conviction through the aid of passion, sympathy, or resentment. The only way to secure fair trials is to set aside the verdicts so procured."

In the case of Dunmore v. State, 115 Ala. 69, 22 So. 541, the Supreme Court of Alabama said:

"Counsel may not in argument to the jury, state as matter of fact, that of which there is no evidence. Such

statement is not within the latitude of discussion the law accords to counsel, and is in itself of evil tendency."

This court has passed upon similar questions several times. Ludlam v. State, 29 Okla. Cr. 420, 234 P. 778; Goodwin v. State, 30 Okla. Cr. 433, 236 P. 636.

The remarks of the county attorney complained of in this case are wholly unauthorized and highly improper, and the overruling by the court of defendant's objection thereto was prejudicial to the substantial rights of the defendant.

The record has been carefully examined, and there is no evidence to warrant the facts stated by the county attorney, and yet the county attorney told the jurors that the statement of facts and deductions made by him therefrom were proper matters for its consideration.

For the reasons stated, we think the defendant did not have a fair and impartial trial. The judgment of the lower court is reversed.

DOYLE, P. J., concurs.

EDWARDS, J., not participating.