## ELIJAH TURNER *et al.* v. STATE.

No. A-1179.    Opinion Filed September 3, 1912.

(126 Pac. 452.)

1.    **HOMICIDE—Harmless Error—Construction.** (a) All defects or imperfections in the matter of form of an indictment or information which do not tend to prejudice the substantial rights of a defendant upon the merits are immaterial, and do not affect the validity of such indictment or information.

(b) An indictment or information which alleges that a number of different persons who were concerned in the commission of an unlawful homicide, held the pistol in their hands and fired the fatal shot is sufficient without stating which one of said defendants held the pistol and fired the fatal shot.

2.    **STATUTES—Indictment and Information—Homicide—Appeal—Review—Penal Statutes—Construction—Indictment — "Murder."** (a) In a capital case, where the extreme penalty of the law is inflicted, we will investigate the record carefully, and, if any material error appears therein which contributed to the injury of the appellant, it will be considered by this court, whether excepted to or not.

(b) The policy of this court in liberally construing penal statutes and in rejecting the common-law doctrine that error presumes injury is explained in this opinion.

(c) An indictment for murder which charges that the homicide was unlawfully committed with a premeditated design to effect the death of the deceased, includes every character and degree of unlawful homicide, and a conviction, if warranted by the testimony, will be sustained under such an indictment for murder, manslaughter, assault with intent to murder, aggravated assault, or simple assault. Jewell v. Territory, 4 Okla. 53, 43 Pac. 1075, and Holt v. Territory, 4 Okla. 76, 43 Pac. 1083, explained and reaffirmed.

(d) In its last analysis murder in Oklahoma consists in the unlawful killing of a human being with a premeditated design to effect his death, or the death of some other person. This premeditated design to effect death must be established either by direct evidence as a matter of fact, or it arises as a conclusive presumption of law in the class of cases mentioned in paragraphs

Statement of Facts.

2 and 3 of section 2268, Comp. Laws 1909. These paragraphs do not state a rule of pleading to be followed in an indictment, but they establish a rule of evidence for the trial judge in the admission of testimony and in his instructions to the jury.

(e) It is made the duty of the Criminal Court of Appeals to modify a judgment whenever in its opinion this should be done, in order to secure justice.

(Syllabus by the Court.)

*Appeal from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Elijah Turner and others were convicted of murder, and they appeal. Affirmed.

The charging part of the information is as follows:

"That the above-named Bob Johnson, John Henry Prather, James Holmes, Charlie Posey, and Elijah Turner did, in Oklahoma county, and in the state of Oklahoma, on the 9th day of March, in the year of our Lord A. D. 1911, commit the crime of murder in manner and form as follows: Unlawfully, wilfully, feloniously without authority of law, and with a premeditated design to effect the death of one W. H. Archie, make an assault with a certain firearm and revolver then and there loaded with powder and leaden balls, and then and there had and held in the hands of them, the said Bob Johnson, John Henry Prather, James Holmes, Charlie Posey, and Elijah Turner, and did then and there with the said firearm and revolver, so had and held as aforesaid, unlawfully, willfully, feloniously, and without authority of law, and with a premeditated design to effect the death of him, the said W. H. Archie, fire, shoot, and discharge the said firearm and revolver at, against, and into the body and head of him, the said W. H. Archie, and did then and there and thereby unlawfully, willfully, feloniously, without authority of law and with a premeditated design to effect the death of him, the said W. H. Archie, inflict one certain mortal wound in and on the body and head of him, the said W. H. Archie, of which said mortal wound so inflicted as aforesaid the said W. H. Archie did languish, and, languishing, did on or about the 9th day of March, 1911, die, with the unlawful, willful, and felonious intent then and there upon the part of them the said Bob Johnson, John Henry Prather, James Holmes, Charlie Posey, and Elijah Turner him, the said W. H. Archie, to kill and murder. Contrary to the form of the statutes in such cases made and provided; and against the peace and dignity of the state."

The jury returned the following verdict: .

"State of Oklahoma, Plaintiff, v. Bob Johnson, Charles Posey, and Elijah Turner, Defendants. Verdict. We, the jury drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendants, Bob Johnson, Charles Posey, and Elijah Turner, and each of them, guilty in manner and form as charged in the information, and fix the punishment of each of them at death. E. H. Campbell, Foreman."

Judgment was rendered on this verdict.

*Wm. Harrison* and *A. W. Turner,* for appellants.

*Smith C. Matson,* Asst. Atty. Gen., and *E. G. McAdams,* for the State.

FURMAN, P. J. (after stating the facts as above). This is a companion case to that of *James Holmes v. State,* 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300. The material facts of the case will be found stated in Holmes' case. It is therefore not necessary to repeat them here.

First. When this case was submitted, counsel for appellants delivered an able, earnest, and instructive oral argument in their behalf, in which he attacked the sufficiency of the information. The first proposition was that the information was invalid and insufficient because it did not allege the name of the defendant who fired the fatal shot, but charged in general terms that the pistol was held in the hands of all of the defendants, and was fired by all of them. In support of this position he cites the case of *State v. Gray,* 21 Mo. 492. This case is as stated by counsel for appellants, but the reverse view of this question is taken by the same court in the case of *State v. Dalton,* 27 Mo. 13, in which an indictment was sustained which charged that an assault was made "with a certain knife of the length of six inches, and of the breadth of two inches, which they, the said John Dalton and Michael Gaughy, then and there in their right hand had and held," etc. In the latter case the court said:

"The averment, however, of the manner in which the instrument is held by which the injury is inflicted is not material; and, if it was so, according to the common-law rules of criminal pleading it is cured by the sweeping provision of our statute which declares that 'no indictment shall be deemed invalid on account of any defect or imperfection which does not tend to

the prejudice of the substantial rights of the defendant upon the merits."

Section 6705, Comp. Laws 1909, is as follows:

"No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect, or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

From this it is seen that all defects or imperfections in the matter of form in an indictment which do not tend to the prejudice of the substantial rights of the defendant upon the merits become immaterial, and do not affect the sufficiency of the indictment. This is the plain mandate of the law, and by it we are bound.

If appellants were all concerned in the commission of the crime charged, the act of one would be the act of all, and it would be utterly immaterial as to which one of the appellants held the pistol and fired the fatal shot. The manner of charging this would be purely a matter of form, and would not in any manner affect the substantial rights of any of the appellants. We therefore cannot sustain this contention of counsel.

Second. Upon the trial of the cause the court, among other things, instructed the jury as follows:

"(10) All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aided and abetted in its commission, though not present when the offense is committed, are principals, and may be prosecuted and convicted as such.

"(11) When two or more persons agree and confederate together to commit a crime under such circumstances as may, when testified by human experience, specifically result in the taking of human life, either in the execution or resistance of their unlawful plans, then each party to such common understanding or conspiracy will be held responsible for the consequences which might be reasonably expected to flow and which do flow from carrying into effect their unlawful combination, and for the taking of human life, if any, to accomplish the object of the conspiracy, even though such consequences were not specifically intended as a part of the original plan. The law is that, if two or more persons conspire to commit a felony and death happens in the prosecution of the common object, all are alike guilty of

the homicide. The act of one of them done in the furtherance of the original design, in contemplation of law, is the act of all. And if such conspiracy and agreement is to do or perform an unlawful act constituting a felony, and in the prosecution of such unlawful act constituting a felony an individual is killed or death ensued, such killing is murder, as to all who are parties to such agreement and conspiracy, or who participated in such unlawful act constituting a felony. And if in this case you find from the evidence beyond a reasonable doubt that the defendants. Bob Johnson, Charlie Posey, and Elijah Turner, entered into a conspiracy or common design among themselves, or with John Henry Prather and James Holmes, to rob the deceased, W. H. Archie, or if they in conjunction with each other, or the said John Henry Prather and James Holmes, did rob the deceased, W. H. Archie, such a conspiracy or act upon the part of said defendants would be an unlawful act constituting a felony under and by virtue of the laws of this state, and if, in carrying out such conspiracy or common design, if any, either of the said defendants or any one acting in conjunction with them in committing said act of robbery, if the same was committed, and in carrying out said conspiracy and unlawful act, if any, killed the said W. H. Archie, such killing was murder, and all concerned therein would be guilty of murder, even though they were not present and did not actually assent to the killing of the said Archie. * * *

"(13) Now, bearing in mind the foregoing definitions and instructions, if you find and believe from the evidence beyond a reasonable doubt that John Henry Prather, named in the information, in the county of Oklahoma, state of Oklahoma, killed W. H. Archie, and you further find from the evidence beyond a reasonable doubt that said killing was done by the said Prather while in the commission of a felony, and you further find and believe from the evidence beyond a reasonable doubt that the defendants, Bob Johnson, Charlie Posey, and Elijah Turner, prior to such killing, entered into a conspiracy or design with the said Prather to commit said robbery or unlawful act, or that the defendants, in conjunction with themselves and the said Prather, did rob the said W. H. Archie, and that during the commission of said unlawful act the said Prather, or any other person connected with the defendants, in the commission of such conspiracy or common design, if any, killed the said W. H. Archie, then and in that event you will find the defendants guilty of murder, and so say by your verdict."

Exceptions were not reserved to these instructions; but, as the extreme penalty of the law has been pronounced against ap-

pellants, we think that, if there was material error in the instructions, which contributed to the injury of appellants, we should consider them as though excepted to. See *Vickers v. United States*, 1 Okla. Cr. 452, 98 Pac. 467. The question involved is as to whether or not, where an information or indictment charges that the homicide was committed with a premeditated design to effect death of the deceased, a conviction can be sustained upon proof that the homicide was committed in the commission of a felony, and should instructions to this effect be given. We have previously held that this can be done. See *Holmes v. State*, 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300. Owing to the great importance of this question, and as a matter of respect for the opinions of those who differ with us, we desire to present our views more fully than was done in Holmes' case.

Section 2268, Comp. Laws 1909, is as follows:

"Homicide is murder in the following cases: (1) When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being (2) When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. (3) When perpetrated without any design to effect death by a person engaged in the commission of any felony."

In attempting to construe this statute and our statutes with reference to criminal pleading and procedure, we must consider and be guided by the general spirit and purpose of the Legislature as manifested in chapter 25, Comp. Laws 1909, under the title of Crimes and Punishment, and also in chapter 89, Comp. Laws 1909, under the title of Criminal Procedure.

Section 2027, Comp. Laws 1909, under the title of Crimes and Punishment, is as follows:

"The rule of common law that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and promote justice."

Section 6487, Comp. Laws 1909, under the title Criminal Procedure, is as follows:

"The rule of common law that penal statutes are to be strictly construed, has no application to this chapter. This

chapter establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

Section 6494, Comp. Laws 1909, under the title of Criminal Procedure, is as follows:

"The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of criminal nature, not specifically provided for in this Code, shall be in accordance with the procedure, practice and pleadings of the common law, and assimilated as near as may be with the procedure, practice and pleadings of the United States or federal side of said court."

Sections 6704 and 6705, Comp. Laws 1909, under the title of Criminal Procedure, are as follows:

"Sec. 6704. The indictment is sufficient if it can be understood therefrom: (1) That it is entitled in a court having authority to receive it, though the name of the court be not stated. (2) That it was found by a grand jury of the county or subdivision in which the court was held. (3) That the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his true name is to the jury unknown. (4) That the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, or subdivision, is triable therein. (5). That the offense was committed at some time prior to the time of finding the indictment. (6) That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. (7) That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case.

"Sec. 6705. No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendent upon the merits."

Section 6957, Comp. Laws 1909, under the title of Criminal Procedure, is as follows:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

These statutes are largely a radical departure from the old common law with reference to criminal law and criminal procedure, and were evidently intended to place criminal law in Oklahoma upon the strong, sound, and safe basis of common sense, reason, and justice. It is on account of these statutes that some parties are unable to understand the policy of this court. We are simply trying in good faith to discharge the obligation of our oaths of office, for we have sworn that we would support the Constitution and laws of Oklahoma. If those who are disposed to criticise this court for its policy would place themselves in the position which we occupy, we believe that they would take a different view of this matter. It is natural for us to be prejudiced in favor of those things with which we are familiar. The writer knows from personal experience that it is an exceedingly difficult thing to break away from preconceived ideas and conditions, for the principles embodied in these statutes are the reverse of the school of law in which he was educated and which he practiced for many years. Herein lies the greatest difficulty in the way of reform in legal procedure. Judges and lawyers have been educated in and are accustomed to an antiquated system of procedure, and have been taught to look with reverence upon old legal theories, and are thereby unduly biased against any change in legal procedure. The result is that even, when the Legislature attempts to reform legal procedure, many courts and lawyers are disposed to construe such legislation in the light of their preconceived ideas. They often do this without being aware of it, and in this way the purpose intended to be accomplished by remedial legislation is defeated. While this court respects the wisdom of the past and can see much in it to admire and to follow, yet we also believe that the world should be ruled by the living, and not by the dead; that the law should keep even step with the march of civilization and the necessities of society in the relation of its members to each other; and that the people have the right by legislation to alter the rules of legal

procedure. When the Legislature has made a change in legal procedure, it is the duty of the courts to lay aside their preconceived ideas, and construe such legislation according to its spirit and reason. We are not in sympathy with those who believe in the infallibility of the common-law rules of criminal procedure, or that form, ceremony, and shadow are more important than substance, reason, and justice. This court does not propose to grope its way through the accumulated dust, cobwebs, shadows, and darkness of the evening of the common-law rules of procedure, but it will be guided, as the statutes above quoted direct, by the increasing light and inspiration of the rising sun of reason, justice, common sense, and progress. As was well said in the November, 1911, issue of the Journal of the American Institute of Criminal Law and Criminology:

· "As some people think more of a man's clothes and style than of his principles, so some lawyers are concerned more with the mere procedure in a trial than with the triumph of the party that ought to succeed on the merits of the case. The quibbling of the logicians and disputes of the middle ages has often formed the subject for satire; but our present-day legal disputes over the technical question of procedure are pettier, less profitable, and more indefensible than the fine-spun arguments and theories of the much-abused schoolman of the middle ages."

The effect of the statutes hereinbefore quoted is to prevent disputes over mere technical questions of procedure. If properly construed, they destroy legal quibbling. Their purpose is to eliminate from a trial all immaterial matters, and thereby better secure the triumph of the party who ought to succeed upon the actual merits of the case. Sections 2027 and 6487 repeal the common-law doctrine of a strict construction of penal statutes, and substitute in its place the equitable doctrine of a liberal construction of such statutes. Courts of this state are not bound by the strict letter of a penal statute, but must construe it according to its spirit and reason, so as to enable it to reach and destroy the evil at which it was aimed, and thereby effect the object for which it was enacted and promote justice. Section 6957 with one stroke of the pen wipes out and destroys that ancient heresy of the common law that error presumes injury,

and by its terms absolutely binds this court to disregard any and all technical errors, defects, and exceptions, unless the party complaining thereof can show from the record that he has been deprived of some substantial right thereby to his injury. Sections 6704 and 6705 do away with all of the artificial distinctions of the common law in indictments or informations, and destroy that ancient refuge, stronghold, and citadel of defense of murderers, thieves, perjurers, and all other desperate criminals that indictments must be certain to a certain intent in every particular, and place them upon a common-sense basis, and make an indictment sufficient if a person of ordinary understanding can know what was intended, and forbid the courts from holding insufficient any indictment or information, unless the defects therein are of such a character as to prejudice the substantial rights of the defendant upon the merits. All of these statutes are contrary to the common law and to the procedure in force in many of the states, but they are binding upon the courts of this state. For this reason it is an utter waste of time for lawyers in their briefs and oral arguments to cite and discuss decisions from other states which have different statutes. It is not a question as to whether we like these statutes. It is enough for us to know that they are the law of Oklahoma. This court is not a forum of legislation. Our duty is ended when we obey the law, and we should either do this or resign and allow others to take the places which we occupy who will regard the obligation of their oaths of office. The great trouble with the judiciary of the entire country is that many judges try to so twist and evade statutes as to enable them to substitute their own private views for regularly enacted statutes. This evil has become so great that there is now more judge-made law in the United States than there is law enacted by the people. If the courts do not correct this evil, no one can tell what the result will be. It will end in one of three things, viz., peaceable reformation, bloody revolution, or a judicial oligarchy. This court proposes to do its full duty by rendering a ready and willing obedience to the regularly enacted laws of Oklahoma, and by doing all in its power to see that they are followed by the trial courts of the state.

With these principles in mind we will now consider the questions before us. In the first place, we must decide as to the meaning of our statute defining murder. To determine this question we must first consider what the law was before the statute was enacted, and see what change, if any, has been made on the subject of murder. The courts of the United States all accept the common-law definition of murder contained in Blackstone, unless altered by statute. In the fourth volume of Cooley's Blackstone, on page 195, we find murder defined as follows:

"Murder is therefore now thus defined, or rather described, by Sir Edward Coke: '(c) When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied.' The best way of examining the nature of this crime will be by considering the several branches of this definition."

Mr. Blackstone then proceeds to define express and implied malice as follows:

"Express malice is when one, with a sedate and deliberate mind and formed design, doth kill another, which formed design is evidenced by external circumstances discovering that inward intention; as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm. This takes in the case of deliberate duelling, where both parties meet avowedly with an intent to murder; think it their duty as gentlemen, and claiming it as their right, to wanton with their own lives and those of their fellow creatures; without any warrant or authority from any power either divine or human, but in direct contradiction to the laws of both God and man; and therefore the law has justly fixed the crime and punishment of murder on them, and on their seconds also. Yet it requires such a degree of passive valour to combat the dread of even the undeserved contempt, arising from the false notion of honour too generally received in Europe, that the strongest prohibitions and penalties of the law will never be entirely effectual to eradicate this unhappy custom; till a method be found out of compelling the original aggressor to make some other satisfaction to the affronted party, which the world shall esteem equally reputable, as that which is now given at the hazard of the life and fortune, as well of the person insulted, as of him who hath given the insult. Also, if even upon a sudden provocation one beats another in a cruel and unusual manner, so that he dies, though he did not intend his

death, yet he is guilty of murder by express malice; that is, by an express evil design, the genuine sense of *malitia*. As, when a parkkeeper tied a boy that was stealing wood, to a horse's tail, and dragged him along the park; when a master corrected his servant with an iron bar; and a schoolmaster stamped on his scholar's belly; so that each of the sufferers died; these were justly held to be murders, because the correction being excessive, and as such could not proceed but from a bad heart, it was equivalent to a deliberate act of slaughter. Neither shall he be guilty of a less crime, who kills another in consequence of such a willful act as shows him to be an enemy to all mankind in general; as going deliberately, and with an intent to do mischief upon a horse used to strike, or cooly discharging a gun among a multitude of people. So, if a man resolves to kill the next man he meets, and does kill him, it is murder, although he knew him not; for this is universal malice. And, if two or more come together to do an unlawful act against the king's peace, of which the probable consequence might be bloodshed, as to beat a man, to commit a riot, or to rob a park; and one of them kills a man; it is murder in them all, because of the unlawful act, the *malitia praecogitata,* or evil intended beforehand.

"Implied malice.—Also, in many cases where no malice is expressed, the law will imply it, as, where a man willfully poisons another; in such a deliberate act the law presumes malice, though no particular enmity can be proved. And if a man kills another suddenly, without any, or without a considerable, provocation, the law implies malice; for no person, unless of an abandoned heart, would be guilty of such an act, upon a slight or no apparent cause. No affront, by words or gestures only, is a sufficient provocation, so as to excuse or extenuate such acts of violence as manifestly endanger the life of another. But if the person so provoked and unfortunately killed the other, by beating him in such a manner as showed only an intent to chastise and not to kill him, the law so far considers the provocation of contumelious behaviour as to adjudge it only manslaughter, and not murder. In like manner, if one kills an officer of justice, either civil or criminal, in the execution of his duty, or any of his assistants, endeavoring to conserve the peace, or any private person endeavoring to suppress an affray or apprehend a felon, knowing his authority or the intention with which he interposes, the law will imply malice, and the killer shall be guilty of murder. And if one intends to do another felony, and undesignedly kills a man, this is also murder. Thus if one shoots at A. and misses him, but kills B., this is murder; because of the previous felonious

intent, which the law transfers from one to the other. The same is the case where one lays poison for A.; and B., against whom the prisoner had no malicious intent, takes it, and it kills him; this is likewise murder. So also if one gives a woman with child a medicine to procure abortion and it operated so violently as to kill the woman, this is murder in the person who gave it. It were endless to go through all the cases of homicide which have been adjudged, either expressly or impliedly, malicious; these, therefore, may suffice as a specimen; and we may take it for a general rule that all homicide is malicious, and, of course, amounts to murder, unless where justified by the command or permission of the law; excused on account of accident or self-preservation; or alleviated into manslaughter, by being either the involuntary consequence of some act, not strictly lawful, or if voluntary, occasioned by some sudden and sufficiently violent provocation. And all these circumstances of justification, excuse, or alleviation, it is incumbent upon the prisoner to make out, to the satisfaction of the court and jury; the latter of whom are to decide whether the circumstances alleged are proved to have actually existed; the former, how far they extend to take away or mitigate the guilt. For all homicide is presumed to be malicious, until the contrary appeareth upon evidence."

It would be useless consumption of time to cite other authorities defining murder at common law, because there is no higher authority on this subject than Mr. Blackstone. The definition which he has given of murder is the clearest and most comprehensive to be found in the books. Other authorities vary a little, but all agree that Mr. Blackstone's definition of murder at common law is substantially correct. It is seen that the common-law definition of murder is exceedingly broad, comprehensive, and elastic. It embraces, according to Mr. Blackstone, an endless variety of cases. Owing to this cause, innumerable and irreconcilable conflicts have arisen in the decision of courts as to what constitutes murder, and as to how it must be charged in an indictment. Our statute is brief, simple, and to the point, and is so plain that it is capable of being understood by all. The first paragraph of section 2268, making the unlawful killing of a human being murder when committed with a premeditated design to effect the death of the person killed, or of any other human being, takes the place of the common-law doctrine of express malice aforethought. It is also a limitation upon the express

malice aforethought, because, as stated by Mr. Blackstone, a person may be guilty of murder on express malice aforethought, "though he did not intend his death, yet he is guilty of murder by express malice; that is, by an express evil design, the genuine sense of *malitia*. As, when a parkkeeper tied a boy that was stealing wood to a horse's tail, and dragged him along the park; when a master corrected his servant with an iron bar; and a schoolmaster stamped on his scholar's belly; so that each of the sufferers died; these were justly held to be murders, because the correction being excessive, and such as could not proceed but from a bad heart, it was equivalent to a deliberate act of manslaughter." Under the first paragraph of our statute, the killing must have been done with a premeditated design to effect the death of the person killed or of some other human being. While our statute does not divide murder into degrees, yet it makes murder committed with a premeditated design to effect death the highest character of this offense. The second and third paragraphs of section 2268 take the place of the common-law doctrine of implied malice. According to Mr. Blackstone in many cases where there is no evidence of express malice, the law will imply malice, upon the ground that no person, unless of an abandoned heart, would be guilty of such an act. He gives many illustrations of this. Among others he states that if one intends to do a felony, and undesignedly kills a man, this is murder on implied malice, and then says:

"It is endless to go through all the cases of homicide which have been adjudged, either expressly or impliedly, malicious; for the general rule is that all homicides are malicious unless where justified by the command or permission of the law or excused on account of accident or self-preservation or alleviated into manslaughter by being either the involuntary consequence of some act, not strictly lawful, or, if voluntary, occasioned by some sudden and sufficiently violent provocation."

It is seen from this that the second and third paragraphs of section 2268 are a limitation upon the common-law doctrine of implied malice. Under these paragraphs, although the state may not be able to prove that the homicide was committed with a premeditated design to effect the death of the person killed, or of

some other human being, yet if the act resulting in the homicide was imminently dangerous to others and evinced a depraved mind regardless of human life, or if perpetrated without any design to effect death by a person engaged in the commission of any felony, such killing will be murder. Unless the state proves an unlawful killing with a premeditated design to take human life, or the evidence shows that 'such killing comes under the second or third paragraphs of the section, such killing, although unlawful, could not be murder under our statute. Mr. Blackstone declares that under the common-law it would be endless to go through all the cases of homicide which have been adjudged either expressly or impliedly malicious. It is therefore too plain for argument that the purpose of our Legislature was to simplify and limit the common-law definition of the crime of murder. A careful comparison of our statutes with Blackstone's definition of murder will show that the above statement is correct. All cases of the unlawful killing of a human being by another which do not come within the first, second, or third paragraphs of section 2268 constitute manslaughter. We have no such offense in Oklahoma as murder in the second degree.

This court said in the case of *Rhea v. Territory,* 3 Okla. Cr. 235, 105 Pac. 316:

"From that it is seen that our statute divides felonious homicide into two degrees, namely, murder and manslaughter. While in one sense they are separate and distinct crimes, yet in a broader sense they both involve but one offense, and that is felonious homicide; in other words, they are simply different degrees of one and the same crime. There is therefore no necessity for including in an indictment for murder a separate count charging manslaughter, for the rule of criminal pleading is universal that an indictment for the highest degree of crime includes all of the lower degrees of the same crime. If a defendant is acquitted on an indictment for murder, who will contend that he can afterwards be indicted and convicted for manslaughter for the same homicide? This alone demonstrates that manslaughter is included in an indictment for murder. Every proper indictment for murder informs the defendant that he is charged with the felonious killing of a human being. This certainly gives him full notice of the nature and cause of the accusation against him. He cannot be heard to complain if he is found guilty of a

lower degree of the very crime with which he is accused, than that stated in the indictment. We could fill volumes with quotations from authorities sustaining these views. Mr. Wharton, in his great work on Homicide (section 653, on page 1043), says: 'On an indictment for murder the jury may find a verdict of manslaughter or of murder in the second degree; so, also, on an indictment for murder in the second degree there can be a conviction for manslaughter. Different defendants may be convicted of different degrees, and a verdict in a prosecution for murder, of guilty as charged of manslaughter, is sufficiently certain to warrant a judgment, and does not find the accused guilty of two offenses. This rule applies to a verdict in a prosecution for murder of involuntary manslaughter, consisting of a killing in the commission of an unlawful act not amounting to a felony, or of a lawful act done in an unlawful manner or without due caution or circumspection. And a person charged with murder may be convicted of negligent homicide. And a conviction of involuntary manslaughter, consisting of the killing of a white person, though it does not apply where the involuntary manslaughter has special statutory ingredients which must be alleged, and which are not included in a general charge contained in the indictment, or where such manslaughter is regarded as a misdemeanor only. And a verdict for manslaughter may be returned in a prosecution for murder under a statute declaring an attempt to produce an abortion, which causes death, to be murder, as well as in the case of an indictment for any other kinds of murder.' "

Manslaughter in the first degree is defined by our statute as follows:

"Sec. 2276. Homicide is manslaughter in the first degree in the following cases: (1) When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor. (2) When perpetrated without a design to effect death, and in the heat of passion; but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide. (3) When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

Manslaughter in the second degree is defined as follows:

"Sec. 2280. Manslaughter in the Second Degree.—Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

We think it is too plain for argument that these several statutes were enacted for the purpose of simplifying and not for the purpose of complicating the laws with reference to unlawful homicide, and that the necessity which produced them was the hopeless state of confusion which existed in the decisions of various states of the United States on this subject, and we believe it is our duty to place such a construction upon these statutes as will simplify prosecutions for unlawful homicide, and, as far as possible, minimize the opportunities of guilty persons charged with this offense to escape merited punishment upon purely technical grounds, for it is in this way only that we can make them reach and destroy the evil at which they are aimed, and accomplish the purpose for which they were enacted, and thus promote the enforcement of justice. These statutes on the subject of unlawful homicide do not create separate and distinct crimes. They all relate to one offense, and that is the unlawful taking of human life, and provide for different characters and degrees of this offense, and they should all be construed together and harmonized with each other. So much for the substantive law of murder itself. Now for its application to the question before us. That question is as to whether or not, where an information or indictment charges that the homicide was committed with a premeditated design to effect the death of the deceased, can a conviction be had upon proof that the killing took place in an attempt to commit a felony.

It is claimed that this question was passed upon in the negative by the Supreme Court of Oklahoma Territory in the case of *Jewell v. Territory,* 4 Okla. 53, 43 Pac. 1075, and that this court reaffirmed the doctrine therein announced in the case of *Morris v. Territory,* 1 Okla. Cr. 617, 99 Pac. 760, 101 Pac. 111. An examination will show that this statement is based upon an entire misapprehension of these cases. The question now under consideration was not involved, presented, discussed, referred to, or decided in either of the cases above mentioned. In Jewell's case the indictment was in the common-law form. The opinion does not state the testimony upon which this conviction was had, but we have examined the original record now on file in the

office of the clerk of this court, and find that Jewell was convicted upon the first count in an indictment which was good at common law and which contained three counts, and found not guilty on the second and third counts. The first count in said indictment is as follows:

"The grand jurors duly summoned from the body of Woodward county and territory of Oklahoma, chosen, examined, selected, impaneled, sworn, and charged in and for the county and territory aforesaid to inquire into and true presentment make of crimes and offenses committed in the county and territory aforesaid, on their oaths do find and present: That one Oliver P. Jewell, late of the county and territory aforesaid, and on the twenty-ninth day of October, A. D. 1894, then and there being with force and arms in the county and territory aforesaid, in and upon the body of one James McGuinn, in the peace of the territory then and there being, feloniously, willfully, premeditatedly, and of his malice aforethought did make an assault, and that the said Oliver P. Jewell a certain pistol then and there charged with gunpowder and leaden bullets, which said pistol he, the said Oliver P. Jewell, in his right hand then and there held, and then and there feloniously, willfully, premeditatedly, and of his malice aforethought did discharge and shoot off, to, against, and upon the said James McGuinn, and that the said Oliver P. Jewell with one of the leaden bullets aforesaid out of the pistol aforesaid then and there by force of the gunpowder aforesaid then and there feloniously, willfully, premeditatedly, and of his malice aforethought did strike, penetrate, and wound him, the said James McGuinn, in and upon the right side of the face of him, the said James McGuinn, giving to him, the said James McGuinn, then and there, with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid, by the said Oliver P. Jewell, in and upon the right side of the face of him, the said James McGuinn, one mortal wound of the depth of six inches, and of the breadth of half an inch, of which said mortal wound, he, the said James McGuinn, then and there, instantly died. And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Oliver P. Jewell, him, the said James McGuinn, in the manner and by the means aforesaid, feloniously, willfully, premeditatedly, and of his malice aforethought did kill and murder; contrary to the statute in such case made and provided, and against the peace and dignity of the people of the territory of Oklahoma."

It is not necessary to consider the second and third counts in the indictment because the appellant was not found guilty, but was acquitted on them, and they were not at issue in the case. An examination of the first count will show that it was drawn under the old common law, and does not attempt to comply with the provisions of our statute, because it nowhere alleges that the killing was done with a premeditated design to effect the death of the deceased. We have carefully read all of the testimony in the case in order that we might fully understand Judge Burford's opinion. There was no eye-witness to the homicide. The state relied alone upon circumstantial evidence and letters written by the defendant while he was in jail to his father and brother. From these letters it appeared that deceased had upon his person a considerable amount of money, and that the murder was committed in the perpetration of robbery. It was also proven that appellant had told two persons he did the killing. Upon this indictment and this testimony the jury returned the following verdict:

"We, the jury impaneled and sworn in the above-entitled cause, upon our oaths find the defendant, Oliver P. Jewell, guilty of murder as charged in the first count in the indictment, and not guilty as to the second and third counts thereof; and we determine that he shall be punished by death. Asa L. Henson, Foreman."

In deciding this case Judge Burford said:

"The contention of appellant is that the allegations of the first count of the indictment will not support a judgment for murder. This presents a grave and difficult question, involving as it does the construction of our statutes and the interpretation of common-law terms and phrases. The count contains a good common-law charge of murder, and, unless our statutes defining the various degrees of homicide have changed the common-law rule, then it is sufficient to support the verdict and judgment in this case. The trial courts have experienced no little difficulty in the trial of this class of cases in an attempt to properly define the degrees of homicide according to our statutes, and to apply the rules laid down in the text-books and adjudicated cases to crimes charged under our statute on the subject of homicide. We apprehend that this difficulty has arisen out of the attempt to apply common-law rules to our statutory definitions upon the

theory that no substantial difference exists. A careful analysis of the statute will make clear a manifest distinction. * * * It will be observed that there is no allegation in the first count of the indictment in this case on which the appellant was convicted, that the assault was committed with the premeditated design to effect the death of the deceased, nor does it contain equivalent language. In fact, it is nowhere alleged that the shooting complained of was with any intent to effect death, except in so far as the same may be inferred from the words 'willfully, premeditatedly, and with malice aforethought,' and, as we have before stated, these elements might all be present in an aggravated assault, and yet be no premeditated design to effect death."

The question now before the court was not in any manner involved in the determination of Jewell's case. All that that case decides, attempts to decide, or could lawfully decide is that a common-law indictment for murder is not sufficient under our statute. We concur in this opinion, because, as we have heretofore shown, a man might be guilty of murder under the common law, and might not be guilty of more than manslaughter under our statute. The homicide in Jewell's case was committed in the perpetration of robbery. The conviction was reversed solely upon the ground that the indictment did not allege that the murder was committed with a premeditated design to effect the death of the deceased. Therefore the conclusion is natural that, if the indictment had contained this allegation, the conviction would have been affirmed, for it was altogether owing to the absence of this averment that the conviction was reversed. So Jewell's case when properly understood, instead of being against our position, supports it. That we are right in our constructions of Jewell's case is shown by the case of *Holt v. Territory,* 4 Okla. 76, 43 Pac. 1083. Judge Bierer, speaking for the court, there said:

"In the case of *Oliver P. Jewell v. Territory,* 4 Okla. 53 [43 Pac. 1075], the opinion in which is delivered at the present session of the court, and which case is, and no doubt will remain, a precedent on this question, we have held that an indictment for murder in order to be sufficient in this class of cases must charge that the unlawful killing must have been accompanied with a premeditated design on part of the slayer

to effect the death of the person killed, and that an indictment charging that the act was committed with malice aforethought is not sufficient."

This matter came again before the Supreme Court of Oklahoma Territory in the case of *Wright v. Territory,* 5 Okla. 80, 47 Pac. 1070. Judge Keaton, speaking for the court, there said:

"Under the former decisions of this court the indictment is clearly insufficient to support a conviction of murder, as it is nowhere stated therein that the acts by which the killing was accomplished and the killing itself were perpetrated by the accused with the premeditated design, or intent, to effect the death of the person killed."

This question came before the Supreme Court of Oklahoma Territory again in the case of *Smith v. Territory,* 11 Okla. 657, 69 Pac. 803. Judge Hainer, speaking for the court, there said:

"It is claimed that the indictment is insufficient for the reason that it does not charge the shooting was done 'with a premeditated design to effect the death of the deceased, J. W. Stovall,' and that this case comes clearly within the rule announced by this court in the cases of *Jewell v. Territory,* 4 Okla. 53, 43 Pac. 1075, and *Holt v. Territory,* 4 Okla. 76, 43 Pac. 1083. In these cases it was held that an indictment which fails to allege that the homicidal act was committed with a premeditated design or intention to effect the death of the person killed is insufficient. We think that this is the true doctrine, and still adhere to the rule announced in those cases. But in the Jewell case, as well as in the Holt case, there was an entire failure to allege that the homicidal act was perpetrated with a design or intention to effect the death of the deceased, and no language of equivalent import was used. But in the case at bar an examination of the indictment discloses that it does allege that the shooting was done with 'premeditated malice and with a design to effect the death of the deceased, J. W. Stovall.' While this averment is not in the exact language of the statute—and no doubt the better rule is to follow the exact language of the statute; that is, that the homicidal act must be done with 'a premeditated design to effect the death of the person killed'—yet we think the language used in this indictment charging that the shooting and killing were done with 'premeditated malice and with a design to effect the death of the deceased' is of equivalent import, and hence sufficient to charge the crime of murder. In

10 Encyclopædia of Pleading and Practice, p. 483, the following rule is announced: 'While it is essential that all the facts constituting an offense must be so stated as to bring the defendant precisely within the law, it is a rule of universal application that, when a statute creates an offense and sets out the facts which constitute it, the offense may be sufficiently charged in the language of the statute. In some cases it has been held that the exact language of the statute must be used in charging an offense which is defined by statute, but the prevailing doctrine is that, although every ingredient of the offense described must be set out, it is not necessary to use the exact language of the statute, words of equivalent import being sufficient, and it is enough substantially to charge the offense denounced in the statute.' And in *Holt v. Territory, supra,* it was said: 'An indictment to be sufficient must charge that the unlawful acts by which the homicide was perpetrated and the killing itself were all done with a premeditated design or intention to effect the death of the deceased.' Hence we think the indictment was sufficient to charge murder, and there was no error committed by the trial court in overruling the demurrer thereto."

These cases are all cited and discussed in the case of *Morris v. Territory,* 1 Okla. Cr. 617, 99 Pac. 760, 101 Pac. 111. They were indorsed then, and to the same extent that they are indorsed now. It is a gross misapprehension of these cases to say that they announce the doctrine that, where an information or indictment charges that the homicide was unlawfully committed with a premeditated design to effect the death of the deceased, a conviction thereon could not be had upon proof that the offense was committed in the perpetration of robbery, or that the defendant could not be convicted of any degree of culpable homicide or assault of which the proof might show that he was guilty. In the case of *Jones v. Territory,* 4 Okla. 47, 43 Pac. 1073, the indictment charged that the murder was committed with a premeditated design upon the part of the defendant to kill the deceased. The defendant was convicted of manslaughter in the first degree. In affirming the judgment of conviction Judge Burford said:

"It is proper on a trial of the charge of murder for the jury to find the defendant guilty of any charge necessarily embraced within that contained in the indictment."

In the case of *Rhea v. Territory,* 3 Okla. Cr. 230, 105 Pac. 314, the indictment charged that the murder was committed by the defendant with a premeditated design to effect the death of the deceased. The defendant was convicted of manslaughter. This court reaffirmed the doctrine announced by Judge Burford in Jones' case. For a full discussion of these questions, see the two cases above cited. The same question came before us in the case of *Byars v. State,* 7 Okla. Cr. 650, 126 Pac. 252, decided at the present term, and the doctrine announced in the Jones case and Rhea case was reaffirmed. The reason of this was well expressed by Judge Hainer in the case of *Smith v. Territory,* hereinbefore cited. That principle is that while it is essential that all the facts constituting the offense must be stated in an information or indictment to bring the defendant within the law, and while it is generally sufficient to charge the offense in the language of the statute, yet this is not absolutely necessary, provided the indictment or information uses words of equivalent import, and it is always enough to substantially charge the offense denounced in the statute. This is not only the law upon principle, but it is in harmony with section 6703, Comp. Laws 1909, which is as follows:

"Words used in a statute to define a public offense, need not be strictly pursued in the indictment; but other words conveying the same meaning may be used."

As we understand it, it is a universal rule of criminal pleading that, where an offense is divided into different characters or degrees, an indictment or information which charges the highest character or degree of such offense includes in it all lower or lesser grades or degrees, upon the principle that the whole necessarily includes all of its several parts. This is also in harmony with section 6829, Comp. Laws 1909, which is as follows:

"When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only."

Applying all of these rules to an indictment or information for murder and looking beneath the surface and considering substance rather than the form of things, and construing our

statutes liberally, as we are required by law to do, and according to their reason and spirit so as to make them reach and destroy the evil at which they are aimed, we believe that an indictment or information which charges that an unlawful homicide was committed with a premeditated design to effect the death of the deceased includes every form, grade, and degree of such offense. Why do we believe this? We first believe it from the analogies of the common law. It has always been held at common law that an indictment for murder upon express malice included implied malice, and that upon such an indictment a conviction could be had for manslaughter, for assault with intent to murder, for aggravated assault, and even for simple assault and battery.

Our statute clearly intended without dividing murder into degrees to make murder committed with a premeditated design to effect the death of any person the highest character of this offense, just as murder upon express malice is the highest character of murder at common law. Our statute does not limit murder to cases in which a premeditated design can be proven as a matter of fact. In this respect it is again similar to the common law, which does not limit murder to cases upon express malice. The statute extends the crime of murder to two other classes of cases, in which although there may be no proof of a premeditated design to effect death, yet the circumstances are such that the law implies, imputes, and presumes the existence of such a design. It is a sound principle of law and also of our statute that every man is presumed to intend the natural consequences of his acts. Applying this principle to the statute under consideration, the second and third paragraphs provide that where a man does any act imminently dangerous to others and evincing a depraved mind regardless of human life, or where he engages in the commission of any felony and a human being is killed thereby, although there may be no evidence of a premeditated design to effect the death of any particular individual, yet as some persons might be killed as the natural and reasonable consequence of such acts, if some person is killed, the law presumes, imputes, and implies that the death of snch person was

designed by the doer of such acts. This is consistent with reason and in harmony with the old common-law doctrine of implied malice, and to this extent this class of cases of implied malice under the common law are incorporated in and become a part of our statute and constitute murder. The allegation in an indictment or information that an unlawful homicide was committed with a premeditated design to effect the death of some human being therefore includes a killing under the circumstances mentioned in paragraphs 2 and 3 of our statute, where the law implies, imputes, and presumes that the killing was committed with a formed design to effect death, just as an indictment at common law charging that the killing was done with express malice included all cases where the proof might show a killing upon implied malice. If this is not correct, then the Supreme Court of Oklahoma Territory in the case of *Jones v. Territory,* and this court in the cases of *Rhea v. Territory* and *Byars v. State,* hereinbefore cited, were wrong in holding that an indictment which charged that the killing of deceased with a premeditated design to effect his death would support a conviction for manslaughter. Then no man can be convicted for manslaughter where the indictment or information charges murder, unless such indictment or information also contains a count charging that the deceased was unlawfully killed without a premeditated design to effect his death while the defendant was engaged in the commission of a misdemeanor. Such indictment should also contain a third count alleging that the homicide was perpetrated without a design to effect the death of deceased and in a heat of passion, but in a cruel and unusual manner by means of a dangerous weapon, and such indictment should also contain a fourth count alleging that the homicide was perpetrated unnecessarily while resisting an attempt by the person killed to commit a crime, or after such attempt had failed. These are the conditions under which a defendant is guilty of manslaughter in the first degree under our statute, and, if it is necessary to allege the conditions contained in the second and third paragraphs of our statute on murder in order to warrant a conviction, under

charge that the offense was committed unlawfully with a premeditated design to effect the death of a human being, then the indictment or information in order to support a conviction for manslaughter must allege the special conditions under which this offense can be committed. Any such construction as this will make an indictment or information for murder as long as the moral law and far more complicated than any form of indictment prescribed by the rules of the common law. It was to free us of this very evil that our statutes were enacted. Such a construction of our statute would place the enforcement of law in Oklahoma in a more complicated condition than it was before our statutes were enacted. If we were to adopt such a construction, we would soon find ourselves involved in absurd and inextricable difficulties, and would be constantly driven from one error to another in vain efforts to harmonize that which would be self-contradictory upon its very face. This would doubtless be very gratifying to criminals and to many lawyers who defend them, but what would be its effect upon the rights and interests of society and the sanctity of human life? What would the hard-working, honest, taxpaying, and law-abiding people of Oklahoma think of this?

We will now test this question by the provisions of our statute with reference to indictments. The plain mandate of section 6704, Comp. Laws 1909, is that an indictment must be drawn in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and to enable the court to pronounce judgment upon a conviction according to law and the right of the case. This requirement with reference to the allegations of an indictment is much simpler than the requirements of the common law. See 4 Cooley's Blackstone, p. 306. Our statute is very similar to the language used by the Supreme Court of the United States in the case of *United States v. Cruikshank,* 92 U. S. 542, 23 L. Ed. 588, which is as follows:

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a fur-

ther prosecution for the same cause; and, second, inform the court of the facts alleged, so that it may decide whether they are sufficient to support a conviction, if one should be had. For this facts are to be stated; not conclusions of law. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances."

But, whatever differences may exist between the common law or the practice in other jurisdictions and our statute, we are bound by and must follow the statute. In a case of murder, what is the act which must be clearly and distinctly set forth in ordinary and concise language? It is the act of killing the deceased, and this must be stated in such a manner as to identify the transaction and enable a person of common understanding to know what is intended, and to enable the court to pronounce judgment upon a conviction thereon. When this is done, the law is satisfied. This is all the law requires, and we have no right to take from or add to this, no matter what the common law may have been, or what the practice in other states may be.

When an indictment states the name of the deceased and the time and place of the homicide, and so describes the manner by which the killing was done as to identify it, this puts the defendant upon notice of the accusation against him, and enables him to prepare for trial, and in case of a conviction or acquittal enables him to plead the same in bar of a subsequent prosecution for the same act. The indictment should further allege that the homicide was committed unlawfully and with a premeditated design to effect the death of the deceased. This is for the information of the judge and to enable him to decide as to whether an offense has been committed, and to pronounce proper judgment upon a conviction. Section 6706, Comp. Laws 1909, provides that the trial, judgment, or other proceedings on such an indictment cannot be affected by reason of a defect or imperfection in any matter of form in the indictment which does not tend to prejudice the substantial rights of the defendant upon the merits. This gives to Oklahoma the best and simplest possible form of indictment, and we do not propose to complicate it by introducing any of the artificial distinctions of the common law. Section 6706,

Comp. Laws 1909, is as follows: "Neither presumptions of law nor matters of which judicial notice is taken need be stated in an indictment." If there could be any doubt on this question, this statute does entirely away with the necessity of alleging in an indictment that the killing occurred under the second or third paragraphs of our statute defining murder. In its last analysis, murder in Oklahoma is the unlawful killing of a human being with a premeditated design to effect his death; but this, by the other paragraphs of the statute, is not confined to cases where such premeditated design can be proven as a matter of fact, but it is extended to the class of cases mentioned in the statute in which the law presumes the existence of such intent. This presumption is not a rule of pleading, but is purely a rule of evidence to be followed by the trial judge in the admission of testimony and in instructions to the jury and in pronouncing judgment upon a conviction.

There is another statute which, while not bearing directly upon this question, is of great importance in determining the spirit and purpose of the Legislature in enacting our Criminal Code and our Code of Criminal Procedure. Section 6955, Comp. Laws 1909, is as follows:

"The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court."

This section confers power upon, and makes it the duty of, this court to modify any judgment in a criminal case when, in our opinion, it is in any manner excessive, either as to degree or amount of punishment, and makes it our duty to revise the discretion not only of the trial judge as to questions of law but also the jury upon all questions of fact. We take it that this extraordinary power should only be used in extreme cases, but nevertheless it clearly exists, and we cannot evade the responsibility it places upon us. The purpose of this statute is to prevent the reversal of cases where the court might be satisfied of the guilt of the appellant, but might also be convinced that in

good conscience the verdict of the jury or the judgment was excessive, either in degree or amount of punishment. But few appellate courts in the United States are vested with such power. In connection with other statutes it manifests a purpose upon the part of the Legislature to make it the duty of this court to harmonize our system of criminal jurisprudence, and place it upon the basis of justice and reason. We would be wanting in intelligence if we did not recognize this purpose, running all through our criminal law, and we would be both cowards and traitors if we did not discharge the duty which it imposes. We find nothing in the record to cause us to believe or to doubt that the evidence and the law fully sustain the judgment in this case.

When the preparation of this opinion was begun, it was the intention of the writer to reply to the views expressed in some text books and also in the opinions of some of the appellate courts of other states who differ with us touching the matters herein discussed, but as all of our time is fully occupied with the discussion and decision of questions vitally affecting our own people, and as in the language of Mr. Blackstone, it would be an endless task to consider and harmonize all of the decisions defining murder and procedure in murder cases, and, as we are not concerned in the administration of law in any other state except Oklahoma, we have decided to refrain from a further expression of our views upon this question at least for the present. What is said in this opinion on this question is intended to be supplemental to what was said on the same question in the case of *Holmes v. State,* 6 Okla. Cr., beginning on page 566, 119 Pac. 430, 120 Pac. 300.

All of the other questions in this case were discussed and decided in the case of *Holmes v. State, supra.* We have carefully gone over these questions again, and do not desire to recede from the conclusions there reached. It is therefore not necessary to repeat here what was said there. The judgment of the lower court is therefore affirmed.

The time originally provided for the execution of appellants having expired, it is ordered that the judge of the district court of Oklahoma county execute a warrant in due form of law, attest-

ed by the clerk of said court and under seal of said court, to be delivered to the sheriff, commanding said sheriff to execute Elijah Turner, Charles Posey, and Bob Johnson between sunrise and sunset on Friday, October 4, 1912, in accordance with law and and the judgment of said court heretofore rendered.

ARMSTRONG and DOYLE, JJ., concur.